[No. D016082. Fourth Dist., Div. One. Mar. 19, 1993.]

MARTIN J. DYKSTRA et al., Plaintiffs and Appellants, v.
FOREMOST INSURANCE COMPANY, Defendant and Respondent.

COUNSEL

Gray, Cary, Ames & Frye, L. B. Chip Edelson and Gail Armist Greene for Plaintiffs and Appellants.

McInnis, Fitzgerald, Rees, Sharkey & McIntyre, Kathleen Furness and Michael A. Leone for Defendant and Respondent.

OPINION

BENKE, Acting P. J.—In this case the liability insurance policies obtained by the plaintiffs provided coverage for "accidents." Alleged misrepresentations made by the plaintiffs for the purpose of inducing participation in a

business venture are not "accidents" within the meaning of those policies. Accordingly the defendant insurer did not owe the plaintiffs any duty to defend them in an action based solely on the alleged misrepresentations.

## FACTUAL AND PROCEDURAL BACKGROUND

### 1. *Policies*

Between 1983 and 1988 plaintiff and appellant Holland Motor Homes Michigan (Holland Michigan) obtained an annual series of "Comprehensive General Liability" (CGL) insurance policies from defendant and respondent Foremost Insurance Company (Foremost). In addition in 1988 Holland Michigan obtained a "Commercial Umbrella Liability Policy." Plaintiff and appellant Martin J. Dykstra was an additional insured on each of the Foremost policies.

Although the Foremost policies varied in some respects in the coverage they provided Holland Michigan and Dykstra, they all shared the same definition of a covered occurrence: "[A]n accident, including continuous or repeated exposure to conditions, which results in bodily injury, property damage or advertising liability neither expected nor intended from the standpoint of the insured."

### 2. *Underlying Claim and Tender of Defense*

On October 24, 1989, Dykstra was named as a defendant in a complaint filed by Israel Feurzeig. The complaint alleged Dysktra had induced Feurzeig to enter into a partnership with Dykstra's son Michael and acquire a mobilehome franchise in San Diego.

The franchise, Holland Motor Homes California (Holland California), was not successful. According to his complaint, Feurzeig lost in excess of $2.6 million in the venture. The complaint alleged Dykstra was liable for these losses because Dykstra had misrepresented his son's experience in mobilehome sales and management of mobilehome dealerships, his son's financial capabilities and the likely profits that would be generated by the franchise. Feurzeig's initial complaint alleged Dysktra was liable on alternative theories of fraud and negligent misrepresentation.

On March 15, 1990, Dykstra tendered defense of the Feurzeig action to Foremost. Foremost responded to the tender by advising Dysktra that it did not appear there was coverage under Foremost's policies but that Foremost would investigate the potential for coverage and reimburse Dykstra for attorney fees he incurred if coverage was found.

On March 23, 1990, Feurzeig filed a first amended complaint. The first amended complaint added Holland Michigan as a named defendant. As against Dykstra the newest pleading added an allegation Dykstra had conspired with his son to induce his son's corporation to breach its fiduciary duties to Feurzeig and alleged Dykstra was liable for an accounting.

On August 7, 1990, Feurzeig filed a second amended complaint in which he added causes of action for intentional and negligent infliction of emotional distress. Feurzeig alleged the conduct which gave rise to his claims for fraud and negligent misrepresentation supported his emotional distress claims.

On September 18, 1990, Dykstra and Holland Michigan settled Feurzeig's claim by agreeing to pay Feurzeig $1 million. The settlement agreement stated $800,000 of the settlement was paid as compensation for "personal injury damages to Feurzeig in the form of negligent infliction of emotional distress."

Following execution of the settlement agreement, Dykstra sent Foremost a demand for reimbursement of his attorney fees and the $800,000 he had paid to Feurzeig as compensation for Feurzeig's emotional distress.

On January 21, 1991, Foremost rejected Dykstra and Holland Michigan's demand. Foremost based its rejection on its determination that Feurzeig had not made a claim for property damage or bodily injury within the meaning of the policies and that Dykstra and Holland Michigan had not shown that any occurrence as defined by the policies gave rise to Feurzeig's claims.

3. *These Proceedings*

On March 4, 1991, Dykstra and Holland Michigan filed a complaint against Foremost. They alleged that in failing to provide them with a defense to the Feurzeig action, Foremost was guilty of breach of contract and breach of the covenant of good faith and fair dealing.

Foremost answered the complaint and raised a number of affirmative defenses. In particular the company alleged that the Feurzeig action did not involve any occurrence, bodily injury, property damage or personal injury as defined in its policies.

The parties filed cross-motions for summary judgment which were submitted to the trial court on an agreed statement of facts. The trial court granted Foremost's motion and denied Dykstra and Holland Michigan's

motion. A judgment in favor of Foremost was entered and Dykstra and Holland Michigan filed a timely notice of appeal.

## ISSUES ON APPEAL

On appeal the parties vigorously dispute whether Feurzeig's claim involved an occurrence as defined by the Foremost policies. They also dispute whether Feurzeig suffered any property damage, bodily injury or personal injury covered by the policies. Because we find Feurzeig's claims were not based on an occurrence, we do not reach the parties' dispute over the type of injury he suffered.

## I

Courts have uniformly found that policies which contain the definition of occurrence set forth in the Foremost policies only provide coverage for accidental events. ■ "Under the interpretation of the case law, 'occurrence' as defined in a CGL policy means 'accidental.' In its plain, ordinary sense, 'accidental' means ' "arising from extrinsic causes[;] occurring unexpectedly or by chance[; or] happening without intent or through carelessness." ' (*St. Paul Fire & Marine Ins. Co.* v. *Superior Court* (1984) 161 Cal.App.3d 1199, 1202 [208 Cal.Rptr. 5], fn. omitted, brackets in original; *Merced Mutual Ins. Co.* v. *Mendez* (1989) 213 Cal.App.3d 41, 48 [261 Cal.Rptr. 273].)" (*Chatton* v. *National Union Fire Ins. Co.* (1992) 10 Cal.App.4th 846, 860-861 [13 Cal.Rptr.2d 318] (*Chatton*); accord *Dyer* v. *Northbrook Property & Casualty Ins. Co.* (1989) 210 Cal.App.3d 1540, 1547 [259 Cal.Rptr. 298]; *Commercial Union Ins. Co.* v. *Superior Court* (1987) 196 Cal.App.3d 1205, 1208-1209 [242 Cal.Rptr. 454]; *Royal Globe Ins. Co.* v. *Whitaker* (1986) 181 Cal.App.3d 532, 537 [226 Cal.Rptr. 435].)

"Since insurance is designed to protect against contingent or unknown risks of harm, rather than harm that is certain or expected [citation], it is well settled that intentional or fraudulent acts are deemed purposeful rather than accidental and, therefore, are not covered under a CGL policy [citations].

"Even more to the point . . . it is likewise established that negligent misrepresentations causing investment loss or loss of other economic interest are considered purposeful rather than accidental for the purpose of insurance coverage. . . . The underlying rationale of this rule is that negligent misrepresentation requires *intent to induce reliance* and, therefore, is a subspecies or variety of fraud which is excluded from policy coverage. (*Gagne* v. *Bertran* (1954) 43 Cal.2d 481, 487-488 [275 P.2d 15]; *Blankenheim* v. *E. F. Hutton & Co.* (1990) 217 Cal.App.3d 1463, 1472-1473 [266 Cal.Rptr. 593].)" (*Chatton, supra,* 10 Cal.App.4th at pp. 860-862, italics added.)

Contrary to Dykstra and Holland Michigan's argument, the holding in *United Pacific Ins. Co.* v. *McGuire Co.* (1991) 229 Cal.App.3d 1560, 1565-1566 [281 Cal.Rptr. 375], has no application here. There the court was dealing with the definition of occurrence provided by a special endorsement to a standard CGL policy. The endorsement defined occurrence as " 'an accident, an *event* [italics added] or a continuous or repeated exposure to conditions which results, during the policy period, in *bodily injury* or *property damage* neither expected nor intended by the insured.' " (*Id.* at p. 1563.) Focusing on addition of the word "event" in the special endorsement, the court in *United Pacific* agreed with the insured that the policy would provide coverage for the intentional act of terminating an employee so long as the results of the termination—the employee's emotional distress—were not also intended by the insured. (*Id.* at p. 1566.)

"The insureds' interpretation comports best with the grammaticial structure of the definition of occurrence and gives substance to the extended coverage in the special endorsement. It is not inconsistent with precedents holding that intentional conduct lies outside the definition of occurrence. As we have noted, these precedents are based on an interpretation of the word 'accident'; the insureds' interpretation rests on the additional word 'event' inserted in the extended definition. Contrary to the protests of Pacific Insurance, we do not think the insureds' interpretation would open the insurance industry to 'unbridled coverage.' It would extend coverage under the special endorsement to an area of liability for bodily injury that, while lying outside standard coverage, is still circumscribed by the statutory limitations of Insurance Code section 533 and the presumably broader limitations of the phrase excluding coverage for damages that are expected or intended." (*United Pacific Ins. Co.* v. *McGuire Co., supra,* 229 Cal.App.3d at pp. 1566-1567.)

Here, of course, the Foremost policies do not extend coverage to both "accidents" and "events." Rather, as in *Chatton,* coverage was provided for accidents only and not for intentional or negligent misrepresentations.

## II

██ Having concluded the Foremost policies provide coverage only for accidents, we turn to the broader question of whether Foremost nonetheless owed Dykstra and Holland Michigan a duty to defend them in the Feurzeig action. ██ "It is axiomatic that an insurer's duty to defend is separate from and broader than its duty to indemnify. [Citation.] The duty to defend is not measured solely by how the third party denominates its complaint or frames its theories, but is also measured by whether there is any *potential* for

the third party's complaint to assert a covered claim. [Citation.] Thus, if the insurer learns facts—whether from the complaint, the insured or another source—which create a potential for the third party to assert a covered claim, the insurer owes a duty to defend. [Citation.]

"Additionally, the duty to defend is measured at the *outset* of the litigation because, unlike the duty to indemnify, which is determinable only after the basis for the insured's liability is finally established, the duty to defend is based on the potential for the establishment of a covered claim, not the actual establishment of a covered claim. . . .

". . . [T]he duty to defend is indeed a wide-ranging obligation. However, such duty, while broad, is not unlimited. Where there is no potential for the third party to recover on a covered claim, there is no duty to defend. [Citations.]" (*Devin* v. *United Services Auto. Assn* (1992) 6 Cal.App.4th 1149, 1157 [8 Cal.Rptr.2d 263].)

■ Accordingly, Foremost's duty to defend turns upon whether there was ever any potential Feurzeig would recover damages based upon accidental conduct committed by Dykstra or Holland Michigan. On this record we find there was never any potential for such a recovery.

First, we examine the face of Feurzeig's claims against Dykstra and Holland Michigan. We know that to recover on theories of fraud or negligent misrepresentation, Feurzeig would have had to establish statements were made for the purpose of inducing Feurzeig's reliance and were therefore not accidental. (*Chatton, supra,* 10 Cal.App.4th at pp. 861-862.) With respect to the claim Dykstra induced his son's corporation to breach its fiduciary duties, proof of any inducement by Dykstra would also be proof Dykstra was acting intentionally. (*Ibid.*)

An analogous problem confronts claims by Feurzeig, such as for an accounting or breach of fiduciary duty, which are based on Dykstra's failure to correct his initial misstatements or provide Feurzeig with further information. Dykstra and Holland Michigan would have a duty to further advise Feurzeig only if Feurzeig could show Dykstra and Holland Michigan knew their affirmative statements or conduct created some reliance by Feurzeig. (See, e.g., Rest.2d Torts, § 551; *Wells* v. *John Hancock Mut. Life Ins. Co.* (1978) 85 Cal.App.3d 66, 72 [149 Cal.Rptr. 171].) Like the intent to induce reliance, knowledge by Dykstra or Holland Michigan of the effect of their statements or conduct would make the statements and conduct nonaccidental. (See *Chatton, supra,* 10 Cal.App.4th at pp. 861-862.)

■ The duty to defend, however, is not limited to the claims a third party has made. It also arises when an insurer has knowledge of facts which

reveal the possibility of a claim covered by the policy. (*Gray* v. *Zurich Insurance Co.* (1966) 65 Cal.2d 263, 275-276 [54 Cal.Rptr. 104, 419 P.2d 168].) Here, however, there are no such extrinsic facts in the record. None are disclosed on the face of the pleadings Feurzeig filed and Dykstra and Holland Michigan do not contend their correspondence to Foremost gave the company knowledge of any additional facts which would support the possibility of coverage.

In sum, there was no potential for recovery by Feurzeig on a covered claim because Feurzeig could recover only by establishing Dykstra's statements were made with either the intent or knowledge they would induce reliance on Feurzeig's part or conduct by his son's corporation.[1] Accordingly, Foremost did not owe Dykstra or Holland Michigan any duty to defend them against Feurzeig's claims.

Judgment affirmed.

Huffman, J., and Froehlich, J., concurred.

---

[1]The allegation Dykstra's conduct caused Feurzeig emotional distress does not expand the policies' coverage. Since Dykstra could only be found liable to Feurzeig for intentional conduct, no occurrence within the meaning of the policies could be established.