**FIRST WYOMING BANK, N.A., JACKSON HOLE, a Wyoming banking association; and First Wyoming Bancorporation, a Wyoming corporation, Appellants (Defendants),**

v.

**CONTINENTAL INSURANCE COMPANY, a foreign corporation, Appellee (Plaintiff).**

No. 90–258.

Supreme Court of Wyoming.

Oct. 4, 1993.

William M. McKellar of Boley & McKellar, Cheyenne, for appellants.

Patrick J. Murphy of Williams, Porter, Day & Neville, Casper, for appellee.

George E. Powers of Godfrey & Sundahl, Cheyenne, for amicus curiae.

Before MACY, C.J., THOMAS, CARDINE and TAYLOR, JJ., and BROWN, J. Retired.

CARDINE, Justice.

Continental Insurance Company (Continental) brought a declaratory judgment action against First Wyoming Bank (Bank) seeking a determination that Continental's policy did not provide the claimed coverage. The trial court granted Continental summary judgment on all of the Bank's claims. The Bank appealed, and in our opinion issued January 19, 1993, we affirmed the summary judgment except that we reversed with respect to the duty to defend and remanded for further proceedings consistent with our opinion. 860 P.2d 1064. Continental petitioned, and, on February 24, 1993, we entered an order granting the petition for rehearing. We now conclude that Continental did not have a duty to defend the Bank and affirm the summary judgment granted by the trial court.

Affirmed.

In the original appeal appellants raised these issues:

I. Whether the trial court erred in granting summary judgment in favor of Continental by concluding the following:

1) That the allegations in the Robinson and Russell complaints did not allege bodily injury as defined by the terms of the insurance policy. (Paragraph 7 of Order Granting Partial Summary Judgment).

2) That the allegations of emotional injury, economic injury, personal distress, and injury to their business reputations as alleged by Robinson and Russell in their complaints do not constitute bodily injury. (Paragraph 8 of Order Granting Partial Summary Judgment).

3) That the complaints of Robinson and Russell did not allege property damage as defined by the policy. (Paragraph 9 of Order Granting Partial Summary Judgment).

4) That the complaints of Robinson and Russell did not allege loss of use of tangible property caused by an occurrence. (Paragraph 10 of Order Granting Partial Summary Judgment).

5) That the coverage provided by Continental did not extend to the Bank's alleged breach of contract. (Paragraph 11 of Order Granting Partial Summary Judgment).

6) That the phrase "legally obligated to pay as damages because of bodily injury or property damage" refers to liability imposed by law for torts and not to damages for breach of contract, except contracts for indemnity. (Paragraph 12 of Order Granting Partial Summary Judgment).

7) That the complaints filed by both Robinson and Russell were in contract and not negligence, although the lawsuits included a one-sentence claim for negligence. Where complaints sound in contract and not negligence, the mere use of the word negligence alone cannot turn the complaint into a cause of action for negligence. (Paragraph 13 of Order Granting Partial Summary Judgment).

### FACTS

Our opinion described in detail the lengthy history of this case, *First Wyoming Bank v. Continental Ins. Co.*, 860 P.2d 1064, 1068–70 (Wyo., 1993). Since we review this case only on a narrow issue of law, we recite its unique and detailed procedural history only insofar as it is necessary.

The Robinsons and Russells began borrowing money from First Wyoming Bank in 1976 and 1978 respectively. In 1983–84, the Robinsons and Russells sought additional monies from the Bank to fund a Montana lawsuit, pay back income taxes, and make mortgage payments on a house. According to their complaint, an officer of the Bank had told the Robinsons and Russells that their requests had been approved and they would be receiving the money. However, no money appeared. The Robinsons and the Russells sued First Wyoming Bank in United States District Court.

First Wyoming Bank contacted its comprehensive general liability insurance carrier, Continental, about the Robinson/Russell suits. Continental answered with a reservation of rights letter. The letter indicated that the policy provided no coverage for the Robinson/Russell claims. The letter also indicated that the only area where coverage was debatable was on the Robinson/Russell claim for emotional distress.

Since Continental had reserved its rights, First Wyoming hired its own lawyer to defend them in the Robinson/Russell litigation. The federal court granted the Bank summary judgment on the claims for negligence, breach of fiduciary duty and RICO. Only the claims for fraud and breach of contract remained. Those two remaining claims were settled by the Bank.

Thereafter, the Bank's attorney wrote Continental several letters accusing Continental of, among other claims, a bad faith refusal to admit coverage and defend the lawsuit against the Bank. Being unable to resolve the coverage dispute, Continental filed a declaratory judgment action in Wyoming District Court seeking a determination of no coverage under the comprehensive general liability policy for the Robinson/Russell litigation. The Bank answered the complaint and asserted a counterclaim which alleged a bad faith refusal to acknowledge coverage and defend and sought costs, damages for the settlement, and punitive damages for the Robinson/Russell litigation.

The district court's order granting summary judgment held that the Robinson/Russell complaints did not allege bodily injury or property damage as defined by the insurance policy and that the coverage provided by Continental did not extend to the Bank's alleged breach of contract with the Robinsons and Russells. In essence, the court found that the Robinson/Russell complaints sounded in contract and not in negligence, the court stating that:

> Where a complaint sounds in contract and not negligence, the mere use of the word negligence alone cannot turn the

complaint into a cause of action for negligence.

On appeal, Justice Urbigkit, writing for the plurality, agreed that there was no coverage and thus no obligation to indemnify the bank for the settlement, thus affirming that part of the district court's summary judgment order. *First Wyoming Bank*, 860 P.2d at 1070. This plurality of the court, however, reversed the summary judgment with respect to the duty to defend and bad faith issues and remanded for trial of those issues.

Addressing the duty to defend, the plurality opinion held that "the significant involvement of a negligence complaint in the litigation created a duty to defend unless the particular character of the claim for damage resulting from negligence establishes, as a matter of law, that coverage under any construction of the pleadings could not be invoked." *First Wyoming Bank*, 860 P.2d at 1082. The opinion concluded: "Issues of the duty to defend and scope and extent of that duty raised by the negligence complaint were improperly determined by the summary judgment granted to the insurer to deny duty to defend." *First Wyoming Bank*, 860 P.2d at 1083.

Justice Urbigkit's opinion affirmed the trial court's order granting summary judgment in all but one respect, the duty to defend based on the claim of negligence. Therefore, the case was remanded for trial on the duty to defend and on the bad faith counterclaim. After that opinion was issued, Continental filed a petition for rehearing, which we granted.

Two basic tenets of law guide our examination of this dispute. First,

[w]hen reviewing the trial court's grant of summary judgment, we examine the case in the same manner as the trial court. Our task requires that we make a dual finding that no genuine issue of material fact exists, and that the prevailing party was entitled to judgment as a matter of law. When considering questions of law, we accord no special deference to the district court's determination. [citations omitted]

*Davidson v. Sherman*, 848 P.2d 1341, 1343 (Wyo.1993). We also note that this court must affirm summary judgment if it "is sustainable on any legal ground appearing in the record." *Deisch v. Jay*, 790 P.2d 1273, 1278 (Wyo.1990).

■ Second, an insurance policy is a contract and is subject to the general rules of contract construction. *St. Paul Fire & Marine Ins. Co. v. Albany County School Dist. No. 1*, 763 P.2d 1255, 1258 (Wyo. 1988). When the policy terms are ambiguous, we construe the policy in favor of the insured. *Id.* (*citing State Farm Fire & Casualty Co. v. Paulson*, 756 P.2d 764 (Wyo.1988); *Worthington v. State*, 598 P.2d 796 (Wyo.1979)). On the other hand, if the policy language is clear and unambiguous, "the rule of strict construction against the insurer does not apply, and the policy must be interpreted in accordance with the ordinary and usual meaning of its terms." *St. Paul Fire & Marine*, 763 P.2d at 1258.

### DUTY TO DEFEND

■ Regarding the duty to defend, we have held that the duty of an insurer to defend a claim is broader than the duty of the insurer to indemnify. *Aetna Ins. Co. v. Lythgoe*, 618 P.2d 1057, 1061 (Wyo.1980) (*citing Lanoue v. Fireman's Fund American Ins. Cos.*, 278 N.W.2d 49 (Minn.1979); *Boston Ins. Co. v. Maddux Well Serv.*, 459 P.2d 777 (Wyo.1967)). Analysis of the duty to defend is not made based on the ultimate liability of the insurer to indemnify the insured or on the basis of whether the underlying action is groundless or unsuccessful. *Lythgoe*, 618 P.2d at 1061 (*citing Employers' Fire Ins. Co. v. Beals*, 103 R.I. 623, 240 A.2d 397 (1968); *Burger v. Continental Nat'l American Group*, 441 F.2d 1293 (6th Cir.1971)). Instead, we analyze the duty to defend by examining the facts alleged in the complaint that the claim is based upon. *Lythgoe*, 618 P.2d at 1061 n. 2. *See also Garvis v. Employers Mut. Casualty Co.*, 497 N.W.2d 254, 258 (Minn. 1993); *County of Columbia v. Continental Ins. Co.*, 189 A.D.2d 391, 595 N.Y.S.2d 988, 990 (1993). Therefore, to determine

Continental's duty to defend the Bank in the Robinson/Russell litigation, we examine the terms of Continental's policy and the allegations contained in the Robinson/Russell complaint.

The Comprehensive General Liability Insurance policy (CGL policy) purchased by First Wyoming Bank from Continental Insurance Company states in part:

### COMPREHENSIVE GENERAL LIABILITY INSURANCE

The Company, in consideration of the payment of the premium, in reliance upon the statements in the declarations of this endorsement made a part hereof and subject to all of the terms of this endorsement, agrees with the **named insured** as follows:

I.  Coverage A—Bodily Injury Liability

Coverage B—Property Damage Liability

The company will pay on behalf of the **insured** all sums which the **insured** shall become legally obligated to pay as damages because of

A.  **bodily injury** or

B.  **property damage**

to which this insurance applies, caused by an **occurrence,** and the company shall have the right and duty to defend any suit against the **insured** seeking damages on account of such **bodily injury** or **property damage,** even if any of the allegations of the suit are groundless, false or fraudulent, and may make such investigation and settlement of any claim or suit as it deems expedient, but the company shall not be obligated to pay any claim or judgment or to defend any suit after the applicable limit of the company's liability has been exhausted by payment of judgments or settlements.

### Exclusions

This insurance does not apply:

\*      \*      \*      \*      \*      \*

(m) to loss of use of tangible property which has not been physically injured or destroyed resulting from

(1) a delay in or lack of performance by or on behalf of the **named insured** of *any contract* or agreement, or

(2) the failure of the **named insured's products** or *work performed* by or on behalf of the **named insured** to meet the level of performance, quality, fitness, or durability warranted or represented by the **named insured;**

but this exclusion does not apply to loss of use of other tangible property resulting from the sudden and accidental physical injury to or destruction of the **named insured's products** or *work performed* by or on behalf of the **named insured** after such products or work have been put to use by any person or organization other than an **insured**[.] [**bolded** emphasis in original, *bolded and italicized* emphasis added]

The policy also contains these definitions in section six:

### VI.  DEFINITIONS

When used in this endorsement (including endorsements forming a part hereof):

\*      \*      \*      \*      \*      \*

"**bodily injury**" means bodily injury, sickness or disease sustained by any person which occurs during the policy period, including death at any time resulting therefrom;

\*      \*      \*      \*      \*      \*

"**occurrence**" means an *accident,* including continuous or repeated exposure to conditions, which results in **bodily injury** or **property damage** neither expected nor intended from the standpoint of the **insured;**

\*      \*      \*      \*      \*      \*

"**property damage**" means (1) physical injury to or destruction of tangible property which occurs during the policy period, including the loss of use thereof at any time resulting therefrom, or (2) loss of use of tangible property which has not been physically injured or destroyed pro-

vided such loss of use is cause by an **occurrence** during the policy period. [**bolded** emphasis in original, ***bolded and italicized*** emphasis added]

This CGL policy clearly and unambiguously states that it covers the Bank for losses caused by an "occurrence" but not for losses caused by the Bank's breach of contract.

The allegations contained in the Russell complaint are as follows. That since 1978 the Russells had a continuing relationship with First Wyoming Bank, who would loan them money; that during 1983 the Bank had promised to lend them money to fund a lawsuit in Montana; after advancing some monies, the Bank cut off funds for the lawsuit, and the plaintiffs had to enter into a contingency fee arrangement with their Montana lawyer as opposed to their prior arrangement; that in 1984 the Bank had also agreed to make an additional loan against a note held by the Russells and to loan money to pay federal income taxes which the Russells owed for the year 1984; the Bank did not make that loan, and, as a result, interest and penalties accrued and a tax lien was placed on the Russells' Montana home.

The Robinson complaint contained similar allegations. It also sought damages against the Bank for the Bank's failure to refinance their home, to fund a lawsuit, to forward an additional $50,000.00 to pay off debts, and additional monies to pay off the 1984 income tax. Since the Bank did not make the alleged promised loan for the income tax, interest and penalties were accruing. According to the Robinson complaint, the Bank had also agreed, and later refused, to refinance and re-write additional notes.

Since the negligence portion of these complaints is where our prior opinion found a duty to defend, we set it out in full:

### FIFTH CLAIM FOR RELIEF
### (NEGLIGENCE)

35. Plaintiffs reallege each and every allegation contained in paragraphs 1 through 34 hereof, as if specifically set forth in this paragraph.

36. The defendants [First Wyoming Bank] acted in a ***negligent and careless fashion in making the representations*** set forth above and in carrying on the banking relationship with the plaintiffs as described herein.

37. As a direct and proximate result of the negligence of the defendants, the plaintiffs have been damaged in the amount of $2,000,000.00. [emphasis added]

That language appears in both the Robinson and Russell complaints.

■ After reviewing the allegations contained in these complaints and the CGL policy language, we are unable to find a duty to defend because the complaints sounded in contract and did not allege losses resulting from an occurrence and therefore did not state a cause of action which the CGL policy covered. Although there is a claim in the complaints labeled "NEGLIGENCE," the facts in the complaint do not demonstrate alleged loss resulting from negligence or alleged loss "caused by an occurrence," but instead demonstrate alleged losses resulting from a breach of contract.

We have previously held that comprehensive general liability policies cover tortious acts but do not cover claims for breach of contract. In *Action Ads, Inc. v. Great American Ins. Co.,* 685 P.2d 42 (Wyo. 1984), we reviewed a comprehensive general liability policy to determine whether it provided coverage to the employer when an employee made a claim against the employer for breach of contract for failure to provide medical and health benefits. *Id.,* at 43. Justice Rose, writing for the court, held: "We conclude that the coverage clause at issue in the present case encompasses liability which the law imposes on all insureds for their tortious conduct and not on the liability which a particular insured may choose to assume pursuant to contract." *Id.,* at 45.

As in *Action Ads,* a review of these complaints makes clear that the Robinson/Russell claim sounds in contract and not in tort. The potential liability of First

Wyoming Bank stems, not from its negligent behavior, but from an alleged breach of contractual obligation—that alleged contractual obligation being to continue lending money as allegedly promised. *See Action Ads*, 685 P.2d at 45. The Bank seeks to make the action sound in tort also, alleging that it negligently breached the contract. The Bank's position seems to be that a careful breach of contract is an action only in contract but a negligent breach sounds in both contract and tort. We found no law to support this unique, creative idea.

■ It is also clear, from the Robinson/Russell complaints, that the Robinsons and Russells were not alleging loss "caused by an occurrence" as is required by the CGL policy. Instead, the Robinson/Russell complaints alleged that the Bank misrepresented its position concerning loans and their banking relationship with the Robinsons and Russells. To recover on this theory, the Robinsons and Russells would have had to establish that the misrepresentations were made for the purpose of inducing reliance from the Robinsons and Russells. *See Dykstra v. Foremost Ins. Co.*, 14 Cal.App. 4th 361, 17 Cal.Rptr.2d 543, 545 (1993). The intent to induce reliance would make the misrepresentations and conduct nonaccidental. *Id.* The CGL policy covers loss caused by an "occurrence" only and defines "occurrence" as an "accident." Thus, if a misrepresentation is non-accidental, then it is not an occurrence and not covered by the CGL policy.

Since the Robinsons and Russells could only recover by establishing that Deming's (the Bank's) statements were made with intent or knowledge that they would induce reliance by the Robinsons and Russells, then there was no potential coverage under Continental's policy. There being no potential coverage, Continental did not have a duty to defend the Bank against the Robinson and Russell claims of negligent misrepresentation.

Case law from other jurisdictions support the proposition that claims alleging misrepresentation do not fall within the coverage of a comprehensive general liability policy, and thus the duty to defend is not triggered. The Fourth District of the California Court of Appeals held that misrepresentations made to induce participation in a business venture were not "accidents" within a comprehensive general liability policy. *Dykstra*, 17 Cal.Rptr.2d 543. Dykstra and his motor home company were sued by Feurzeig. *Id.*, at 544. Feurzeig alleged that Dykstra induced him to enter into a mobile home partnership using misrepresentations about Dykstra's son's experience in mobile home sales and management and misrepresentations about the potential profits. *Id.* The insurance company rejected Dykstra's demand for reimbursement of the $800,000 Dykstra paid to settle the case. *Id.* Dykstra sued the insurance company, but the trial court granted summary judgement to the insurer. *Id.* The court of appeals upheld the summary judgement. *Id.*, at 547.

That court reasoned that an "occurrence" under a CGL policy is an accident. *Dykstra*, 17 Cal.Rptr.2d at 545. Thus, " 'it is well settled that intentional or fraudulent acts are deemed purposeful rather than accidental and therefore, are not covered under a CGL policy [citations].' " *Id.* (*quoting Chatton v. Nat'l Union Fire Ins. Co.*, 10 Cal.App. 4th 846, 13 Cal.Rptr.2d 318, 328 (1992)). The court continued:

> "it is likewise established that negligent misrepresentations causing investment loss or loss of other economic interest are considered purposeful rather than accidental for the purpose of insurance coverage. * * * The underlying rationale of this rule is that negligent misrepresentation requires *intent to induce reliance* and, therefore, is a subspecies or variety of fraud which is excluded from policy coverage."

*Id.* The court found that there was no coverage under the CGL policy or the alleged misrepresentations. *Id.*, at 545–46. The court then concluded that the insurer had no duty to defend. *Id.*, at 546. Their analysis is persuasive here.

The district court was entirely correct in granting the summary judgment as a mat-

ter of law. Continental had no duty to defend against the Robinson/Russell complaints because the complaints did not state a cause of action covered by this CGL policy. Because we find that the Robinson and Russell claims were not based on an "occurrence" under the policy, we do not reach the dispute over what type of injury the Robinsons and Russells suffered.

### BAD FAITH CLAIM

Even if we found a duty to defend in this case, which we do not, there still would be no claim for bad faith under recent cases on bad faith. The appropriate standard of care to apply when evaluating a potential bad faith claim is whether the validity of the denied claim was fairly debatable. *Darlow v. Farmers Ins. Exchange,* 822 P.2d 820, 823 (Wyo.1991) (*citing McCullough v. Golden Rule Ins. Co.,* 789 P.2d 855, 860 (Wyo.1990)). *See also Hatch v. State Farm Fire & Casualty Co. Ins.,* 842 P.2d 1089, 1092 (Wyo.1992).

Since Continental has received summary judgment from a district court and now two opinions from this court on the issue of coverage, it would likely constitute a "fairly debatable claim" and therefore no action for bad faith would lie in any event. Since this bad faith issue is no longer pending, the discovery issue associated with it (the *in camera* documents) is also no longer an issue, and we do not address it.

### CONCLUSION

After rehearing this case, we have determined that the portion of the prior opinion which held that there was a duty to defend the negligence claim against the Bank must be vacated. In our prior opinion, the duty to defend was the sole basis for reversing summary judgment. Since we now vacate that ruling, the original order of the district court granting summary judgment is affirmed.

Affirmed.