[No. B082619. Second Dist., Div. Three. Jan. 11, 1996.]

GEORGE J. MILLER et al., Plaintiffs and Appellants, v. WESTERN GENERAL AGENCY, INC., et al., Defendants and Respondents.

## COUNSEL

Douglas J. Rosner for Plaintiffs and Appellants.

Kane & Whelan and Mark C. Kane for Defendants and Respondents.

## OPINION

**CROSKEY, Acting P. J.**—In this action for breach of contract, bad faith and fraud, brought by the plaintiffs George J. Miller and Teresa L. Miller (the Millers) against the defendants Western General Agency, Inc., and Central-National Insurance Company (collectively Central-National), the trial court granted summary judgment in favor of Central-National. The Millers have appealed, claiming that Central-National wrongfully refused to provide them a defense under their homeowners policy when they were sued for misrepresentation and concealment allegedly committed in connection with the sale of their home.

We conclude that the third party claim asserted against the Millers was neither covered nor potentially covered under their homeowners policy. Therefore, Central-National owed them no duty to provide a defense and the trial court properly granted summary judgment on the complaint. We affirm the judgment.

### FACTUAL AND PROCEDURAL BACKGROUND[1]

On October 21, 1986, Central-National issued a homeowners policy providing property and liability insurance to the Millers covering their home in the Simi Valley. The policy was in effect for two years, until October 21, 1988. On or about July 22, 1988, the Millers sold their home to Arthur and Katherine Nicolai (the Nicolais).

After the transfer of title to the Nicolais, *and over a year after the termination of Central-National's policy*, the Nicolais filed an action for damages against the Millers and several other parties. The complaint contained three causes of action directed to the Millers:[2] (1) intentional infliction of emotional distress, (2) fraud, deceit and suppression of fact, and (3) negligent misrepresentation. In their complaint, the Nicolais alleged that the

---

[1]Our recitation of the facts is based upon the joint statement of undisputed facts supplied to the trial court prior to its ruling on Central-National's summary judgment motion.

[2]The relevant pleading before us is the third amended complaint which was filed on August 30, 1990. The original complaint was filed on December 18, 1989.

plumbing in the home was in a defective condition at the time the escrow closed and that the Millers knew or should have known of such fact prior to the sale. The Nicolais further alleged that the Millers never disclosed such information and, in fact, intentionally suppressed and concealed the true condition of the plumbing in order to induce the Nicolais to complete the purchase. They assert that the Millers acted intentionally with the intent to deceive the Nicolais; alternatively, it is alleged that the Millers made representations about the good condition of the plumbing without any reasonable basis for believing that such representations were true. Finally, the Nicolais alleged that they relied on such representations in deciding to close the escrow and would not have done so had they known the actual facts. The Nicolais alleged that as a result of the actions of the Millers, they have suffered a loss of use and enjoyment of the home, mental and emotional aggravation and damage to real and personal property due to breakage and leakage of the plumbing system.

The Millers tendered the defense of this action to Central-National on December 17, 1990. On January 22, 1991, Central-National denied coverage and refused to provide a defense. The company stated that no potential for coverage existed and therefore no duty to defend or indemnify could arise. It cited four reasons for its decision: (1) the Nicolais' complaint did not claim a liability based upon an "occurrence" as that term was defined in the policy (i.e., an accident resulting in bodily injury or property damage neither expected nor intended by any insured); (2) the claim asserted by the Nicolais was subject to three policy exclusions (coverage was *excluded* for bodily injury or property damage: (a) expected or intended from the standpoint of the insured, (b) which arises out of a business pursuit of the insured, or (c) which arises out of liability under any contract or agreement); (3) the damage claimed by the Nicolais occurred after the termination date of the policy; and (4) the Millers had no *reasonable* expectation of a defense.

The Millers responded to Central-National's refusal to provide a defense by filing this action for breach of contract, bad faith and fraud on November 6, 1991. Central-National moved for summary judgment based upon the same grounds it had asserted in denying coverage. The court, concluding that there was no potential for coverage under the Millers' homeowners policy for the claims asserted by the Nicolais' complaint, granted the motion on December 21, 1993. Judgment in favor of Central-National was entered on the same date and this timely appeal followed.

## CONTENTIONS

The Millers contend that the defective plumbing in their home, allegedly caused by the negligence of other defendants named in the Nicolais' complaint, (1) was a covered risk under their policy, (2) existed and caused

damage to their home while Central-National's policy was still in effect, (3) was neither intended nor expected by them, (4) constituted an occurrence under, and was not excluded by, the terms of their policy and (5) did not preclude them from having a reasonable expectation of a defense. Arguing that genuine issues of fact exist as to all of these points, the Millers contend that summary judgment was improper.

Central-National responds that the Millers' potential liability to the Nicolais is not based upon the *existence* of defective plumbing, but upon the Millers' fraudulent and deceptive misrepresentation and concealment of the defects. Such intentional and deceptive acts cannot constitute an occurrence, as defined in the policy, and, in any event, would be excluded thereunder. Thus, the damages claimed by the Nicolais do not constitute either bodily injury or property damage caused by an occurrence. Finally, Central-National contends that coverage for the Nicolais' claims was precluded by Insurance Code section 533.[3] For all of these reasons, Central-National argues that no potential for coverage ever existed and therefore there was no duty to provide a defense or indemnity to the Millers.

We find merit in Central-National's arguments.

## DISCUSSION

■ In order for the Millers to successfully claim that a potential for coverage exists, they must be able to demonstrate that the allegations of the Nicolais' complaint constitute an "occurrence" under the policy. That term is defined in the policy as "an *accident*," including exposure to conditions, which results, during the policy period, in *bodily injury* or *property damage*. (Italics added.) The term "accident" is defined as "a sudden event resulting in *bodily injury* or *property damage* which is neither expected nor intended by any insured." (Italics added.) The term "bodily injury: means "bodily harm, sickness or disease. . . ." The term "property damage" is defined as "physical injury to, or destruction of, or loss of use of *tangible property*. . . ." (Italics added.) ■ The interpretation of such language is a question of law. (*California Shoppers, Inc.* v. *Royal Globe Ins. Co.* (1985) 175 Cal.App.3d 1, 35 [221 Cal.Rptr. 171].) We find these policy provisions to be clear and unambiguous.

■ The Millers misconceive the nature of their rights under the policy when they claim that the plumbing defects found to exist in their former home were a "covered risk" under the policy. In doing so, they are confused about the claim which has been asserted against them. The Millers are being

---

[3]Insurance Code section 533 provides in part: "An insurer is not liable for a loss caused by the wilful act of the insured . . . ."

sued not because their home had defective plumbing, but because they allegedly fraudulently misrepresented and concealed such fact from the Nicolais.

Whether the Millers' misrepresentations were intentional or simply negligent, they did not constitute an "accident."[4] ▆ "In its plain, ordinary sense, 'accidental' means ' "arising from extrinsic causes[;] occurring unexpectedly or by chance[; or] happening without intent or through carelessness." ' [Citations.] Since insurance is designed to protect against contingent or unknown risks of harm, rather than harm that is certain or expected [citation], it is well settled that intentional or fraudulent acts are deemed purposeful rather than accidental and, therefore, are not covered under a [liability] policy [citations]." (*Chatton* v. *National Union Fire Ins. Co.* (1992) 10 Cal.App.4th 846, 860-861 [13 Cal.Rptr.2d 318].) Likewise, " 'negligent misrepresentations causing investment loss or loss of other economic interest are considered purposeful rather than accidental for the purpose of insurance coverage. . . . The underlying rationale of this rule is that negligent misrepresentation requires *intent to induce reliance* and, therefore, is a subspecies or variety of fraud which is excluded from policy coverage. [Citations.]' " (*Dykstra* v. *Foremost Ins. Co.* (1993) 14 Cal.App.4th 361, 366 [17 Cal.Rptr.2d 543]; see also *Chatton* v. *National Union Fire Ins. Co.*, *supra*, 10 Cal.App.4th at pp. 861-862.)

In *Dykstra,* the court held that misrepresentations made by the insured for the purpose of inducing participation in a business venture were not an "accident" within the meaning of policy language substantially identical to that before us. Similarly, in *Chatton* the court held that there could be no coverage for an insured who was sued in an action predicated upon intentional and negligent misrepresentations.

We cannot distinguish this case from *Safeco Ins. Co. of America* v. *Andrews* (9th Cir. 1990) 915 F.2d 500, where the court applied California law to facts substantially identical to those before us. Kandace Kuehl had purchased property from the insured, Andrews, whom she later sued, alleging that he had made negligent misrepresentations as to a number of alleged defects in the property which he had failed to discover and report to her. These defects included: (1) unstable shifting earth, (2) defective wiring, (3)

---

[4]The Millers, relying on *United Pacific Ins. Co.* v. *McGuire Co.* (1991) 229 Cal.App.3d 1560 [281 Cal.Rptr. 375], argue that their alleged conduct is nonetheless an occurrence under the policy. However, the policy in *United Pacific* contained an endorsement which expanded the definition of occurrence to include an "accident or *event.*" This justified the court's conclusion that the insured employer had coverage for an employee's wrongful termination action based on the alleged *intentional* termination of that employee. We have no such policy language in this case and the Millers' reliance on *United Pacific* is misplaced.

defective plumbing, and (4) a severe water leakage problem. In rejecting Andrews's claim that a potential for coverage existed, the court stated: "Although the defective condition of the property is an element of Kuehl's claims, the defects cannot, even when interpreting the policy broadly, be considered the *cause* of Kuehl's damages. The cause of the damage was Andrews's alleged misrepresentations, which are not an 'occurrence' or a 'peril insured against' under the terms of the policy. There is, therefore, no potential for liability that arguably comes within the scope of the insurance coverage provided by Safeco." (*Id.*, at p. 502.)

The Millers make the same mistake as did the insured in *Safeco*. The basis for Nicolais' complaint is not the alleged defective plumbing, although it might otherwise have been a part of their damages. What they are suing for is the tortious fraudulent conduct of the Millers which simply does not fall within the coverage of Central-National's policy.

Not only have the Millers' failed to overcome the argument that their alleged misconduct did not constitute an "accident" under the policy, it is also clear that the claims asserted by the Nicolais have resulted in neither *bodily injury* or *property damage*. Under the policy, which clearly defines those terms, the claims asserted against the Millers had to include "bodily harm" or "physical injury to . . . *tangible property*." Yet, what the Nicolais have sued the Millers for is the economic loss and attendant emotional distress which resulted from Millers' misrepresentation.

The Nicolais have clearly alleged claims for intentional and negligent misrepresentations which caused them a pecuniary loss—the loss in fair market value of their new home. "Such an injury is not an injury to *tangible* property within the meaning of a liability policy, because damages for fraud are ordinarily limited to recovery of economic [damages] [citation], which the courts have repeatedly held are not injuries to *tangible* property within the scope of coverage of a liability policy. [Citations.]" (*Devin* v. *United Services Auto. Assn.* (1992) 6 Cal.App.4th 1149, 1158-1159 [8 Cal.Rptr.2d 263].) As the court held in *Chatton* v. *National Union Fire Ins. Co, supra,* 10 Cal.App.4th at pages 859-860, the emotional trauma suffered by claimants as a result of an investment loss, occasioned by the negligent misrepresentations of the insured, are not covered. Since economic damages arising from negligent representations do not constitute damages to *tangible* property, they are not recoverable under the bodily injury and/or property damage clauses of the policy. (See also *Warner* v. *Fire Ins. Exchange* (1991) 230 Cal.App.3d 1029, 1034-1035 [281 Cal.Rptr. 635].) Moreover, it now appears to be clearly settled in California that occurrence-based liability policies were never intended to cover emotional distress damages that flow from an

uncovered occurrence and an insured *cannot* reasonably expect coverage or a defense merely because a claim of emotional or physical distress is alleged as a result of an economic loss. (*Waller* v. *Truck Ins. Exchange, Inc.* (1995) 11 Cal.4th 1, 23 [44 Cal.Rptr.2d 370, 900 P.2d 619].)

Thus, the claim asserted against the Millers was not embraced within the liability policy issued to them by Central-National. Where, as here, there is no possibility of coverage, there is no duty to defend. (*Fire Ins. Exchange* v. *Abbott* (1988) 204 Cal.App.3d 1012, 1029 [251 Cal.Rptr. 620].) ■ The duty to defend is broad, but it is not unlimited. "[I]t is measured by the nature and kinds of risks covered by the policy." (*Waller* v. *Truck Ins. Exchange, Inc., supra*, 11 Cal.4th at p. 19.)

We therefore conclude that the trial court properly determined that no potential for coverage existed and summary judgment in favor of Central-National was warranted.

### DISPOSITION

Judgment affirmed. Central-National shall recover its costs on appeal.

Kitching, J., and Aldrich, J., concurred.