### PROGRESSIVE CASUALTY INSURANCE COMPANY, an Ohio Corporation, Plaintiff,

v.

### BROWN'S CREW CAR OF WYOMING, INC., d/b/a/ Armadillo Express, a Wyoming Corporation, Union Pacific Railroad Company, a Delaware Corporation, and Corporate Lodging Consultants, Inc., d/b/a/ Crew Transport Service Company, a Kansas Corporation, Defendants.

No. 98–CV–019–B.

United States District Court,
D. Wyoming.

Nov. 2, 1998.

Loyd E. Smith, Murane & Bostwick, Cheyenne, WY, for Progressive Cas. Ins. Co.

Donald J. Sullivan, Cheyenne, WY, Glenn E. Smith, Glenn E. Smith & Associates, Cheyenne, WY, for Brown's Crew Car of Wyoming, Inc.

Mark C. Hansen, Robert N. Belt, C. William Kraft, Union Pacific Railroad Co., Law Department, Denver, CO, for Union Pacific Railroad.

J. Kent Rutledge, Louis Piccioni, Lathrop & Rutledge, Cheyenne, WY, for Corporate Lodging.

### ORDER ON CROSS–MOTIONS FOR SUMMARY JUDGMENT

BRIMMER, District Judge.

This matter comes before the Court on Plaintiff's Motion for Summary Judgment and Defendant Brown's Crew Car of Wyoming, Inc.'s Motion for Partial Summary Judgment on whether Progressive breached its contract by refusing to provide a defense to Defendant Union Pacific Railroad Company ("UP") in two underlying lawsuits brought against UP. The Court, having reviewed the materials on file both in support of and in opposition to, having heard oral argument, and being fully advised of the premises, **FINDS** and **ORDERS** as follows:

## BACKGROUND

This is a declaratory judgment action regarding the terms of a business automobile insurance policy issued by the plaintiff-insurer, Progressive Casualty Insurance Company ("Progressive"), to the defendant-insured Brown's Crew Car of Wyoming, Inc., d/b/a Armadillo Express ("Brown").

Brown is a common carrier that provides transportation services for UP. Corporate Lodging Consultants, Inc., d/b/a Crew Transport Service Company ("CTS") contracts with various transportation companies for the purpose of securing transportation services for UP employees.

In June 1992, UP contracted with CTS to secure transportation services for UP's employees ("CTS/UP Contract"). That contract required CTS to:

> [D]efend, indemnify and save harmless Railroad [UP] from and against any and all claims, demands, suits, losses, outlays, expenses (including attorneys fees) or actions arising out of injury to or death of any person ... while in or about Transportation Company's and selected Alternate Transportation Company's vehicles or while in or about any vehicle provided by or on behalf of CTS or Transportation Company for transportation services when such injury ... results from ... the willful or negligent acts or omissions of CTS....

Section 5, CTS/UP Contract.

On May 1, 1993, Brown entered into a contract with CTS to provide transportation services to UP (hereinafter the "CTS/Brown Contract"). The CTS/Brown Contract, at Section 9 and 10, required Brown to maintain insurance for the benefit of UP and to indemnify and hold harmless UP and CTS.

In March 1996, Brown was transporting a UP employee, Charles D. Keating, when an accident occurred that injured Keating. In January 1997, Keating sued UP pursuant to the Federal Employers Liability Act ("FELA") alleging that his injuries were due to UP's negligence for failing to provide him with a safe place to work. Keating also sued Brown for negligence and alleged that he

was a third-party beneficiary to the CTS/Brown contract.

In January 1996, Brown was transporting another UP employee, Rodney J. Cook, when the van allegedly hit a pothole causing injuries to Cook. Cook also sued UP pursuant to FELA alleging that UP had the duty to provide him with a safe place to work, that UP negligently maintained the roadway on which the accident occurred, and that UP, through its agent Brown, negligently operated the van.

In 1995, Progressive issued to Brown a business auto policy (the "Policy"). The Policy was in effect for a period encompassing the dates of both the Keating and Cook accidents. After Keating filed his lawsuit against UP, UP tendered defense of the Keating suit to Progressive. Progressive did not provide a defense to UP because it claimed the Policy did not cover UP for claims made against UP by one of its own employees. UP then demanded that Brown reimburse UP for its defense costs. Brown, in turn, demanded that Progressive pay the defense costs that UP was asking from Brown.

Similarly, in the Cook lawsuit, UP demanded that Brown, CTS, and/or Progressive reimburse UP for all of its defense costs. Brown in turn made a demand upon Progressive to pay for UP's defense costs in the Cook lawsuit. The Cook lawsuit was ongoing at the time of oral argument.

Although Progressive disputes that the Policy issued to Brown provides coverage for UP's defense costs for the Cook and Keating FELA claims, Progressive has entered into an agreement with Brown by which Progressive has paid UP's outstanding defense costs with a right of reimbursement depending upon the outcome of this declaratory judgment action. The parties to this action ask the Court to determine whether the business automobile policy between Progressive and Brown provided coverage for UP's attorneys fees and costs incurred in its defense of the Keating and Cook lawsuits.

## SUMMARY JUDGMENT STANDARD

The standard for summary judgment is well-established and need not be recited in great detail here. Summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). A fact is material if it might affect the outcome of the suit, and an issue of material fact is genuine if a reasonable jury could return a verdict for the party opposing summary judgment. *Walker v. Toolpushers Supply Co.*, 955 F.Supp. 1377 (D.Wyo.1997). In determining whether to grant summary judgment, the Court must examine the factual record in the light most favorable to the nonmoving party. *Thomas v. IBM*, 48 F.3d 478, 484 (10th Cir.1995).

## DISCUSSION

There are three essential issues in this case: (1) whether UP was an "insured" under the Policy, (2) whether the CTS/Brown Contract was an "insured contract" under the Policy that triggered Progressive's duty to defend, and (3) if UP was an "insured" under the Policy, whether the Policy contained any exclusions which precluded coverage to UP in regards to the underlying lawsuits.

### 1. Applicable Law

Before discussing UP's status under the insurance Policy, this Court must decide which state's law of contract interpretation to apply. In a diversity case, a federal court must apply the substantive law that a state court sitting in that state would apply under its conflicts of law principles. *International Surplus Lines Ins. Co. v. University of Wyoming Research Corp.*, 850 F.Supp. 1509, 1517–1518 (D.Wyo.1994). Because the contract was made in Wyoming and the policy was issued to a Wyoming policyholder, Wyoming law on contract interpretation applies. *Id.* Interpretation of a contract is a matter of law to be derived from the plain meaning of a clear and unambiguous agreement. *Kerper v. Kerper*, 780 P.2d 923, 934 (Wyo.1989). When the parties have reduced their agreement to a written document, the Court should look no further than the four

corners of the contract to determine the intent of the parties. *Int'l Surplus Lines,* 850 F.Supp. at 1519. When the contract is unambiguous, then disputes relating to the contract may properly be accomplished by summary judgment. *Id.* Both parties and the Court agree that no material facts are in dispute on the issue of whether the Policy provided coverage for UP's attorneys fees and costs in the Keating and Cook lawsuits. The issue is thus appropriate for summary judgment.

## 2. Is UP an "insured" under the Policy?

There are several provisions of the Policy which are pertinent to the issue at hand. The liability coverage afforded by the Policy is detailed in Section II(A): Progressive will "pay all sums an 'insured' legally must pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies." Progressive has the "right and duty to defend any 'insured' against a 'suit' asking for such damages ... [h]owever, [Progressive has] no duty to defend any 'insured' against a suit seeking damages for 'bodily injury' ... to which this insurance does not apply."

The Policy identifies Brown as the named insured, but others may be considered "insureds" under the Policy as well. In Section II(A)(1), the Policy defines an "insured," in pertinent part, as follows:

 a. You [Brown] for any covered "auto".

 . . . .

 c. Anyone liable for the conduct of an insured described above but only to the extent of that liability.

In its motion for partial summary judgment, Brown admits that UP is neither the "named insured" nor identified as an "additional insured" under the Policy. Brown maintains, however, that UP falls into the definition of "insured" given in Section II(A)(1)(c) of the Policy, namely, "[a]nyone liable for the conduct of an insured described above. . . ." Brown claims that UP, acting as Brown's principal, may be liable for the con-

duct of Brown in the accidents involving Keating and Cook. As a result, Progressive had a duty to defend UP in the underlying suits.

According to Wyoming law, a principal is liable for the negligence of its agents acting within the scope of their agency. *See Beard v. Brown,* 616 P.2d 726 (Wyo.1980). Brown, however, had no employment or contractual relationship with UP on which to base a principal-agent relationship. UP had a contract with CTS who, in turn, contracted with Brown to provide transportation services to UP. Section 6 of the CTS/UP Contract provided:

> CTS shall employ and direct all persons performing any service for it pursuant to this agreement, and such persons shall be and remain in the sole employees [sic] of and subject to the control and direction of CTS and not the employees of or subject to the control and direction of Railroad [UP]. . . .

Correspondingly, CTS employed Brown as an independent contractor:

> Company [Brown] and the agents and employees of Company are not and shall not be considered employees of CTS or Railroad [UP]. Company shall be and remain an independent contractor and nothing herein contained shall be construed to be inconsistent with that status.

CTS/Brown Contract, Section 6.

 ■ Brown had no direct contractual or employment relationship with UP whereby UP could control Brown's actions. CTS employed Brown as an independent contractor, and UP in turn contracted with CTS. Without a contractual or employment relationship with Brown where UP exerted some measure of control, Brown should not be considered UP's agent.[1] *See Krier v. Safeway Stores 46,* 943 P.2d 405 (test for principal/agent relationship is principal's right to control agent) (Wyo.1997); *Holliday v. Bannister* 741 P.2d 89, 95 (Wyo.1987) (agency relationship results from consent by one that another

---

**1.** Whether an agency relationship exists is normally a question of fact, but when evidence does not create a question of fact, the Court may make that determination as a matter of law. *Fowler v.*

*Westair Enterprises, Inc.,* 906 P.2d 1053 (Wyo. 1995). Because the facts of this case are essentially undisputed, the Court may rule on this issue as a matter of law.

shall act on his behalf subject to his control). Consequently, UP cannot be considered "anyone liable for the conduct of [Brown]" and is not an "insured" under Section II(A)(1)(c) of the Policy.

UP, therefore, is not a "named insured," "additional insured," or "insured." According to Section II(A) of the Policy, Progressive only had a duty to defend "insureds." Therefore, Progressive did not breach its insurance contract with Brown when it refused to provide UP with a defense in the Cook and Keating lawsuits.

■ The determination that UP was not an "insured" under the Policy necessarily dismisses Brown's assertion that Progressive had a duty to defend UP apart from any duty it had to indemnify UP. It is true that the "duty of an insurer to defend a claim is broader than the duty of the insurer to indemnify," and that the "duty to defend is analyzed by examining the facts alleged in the complaint that the claim is based upon." *Hutchinson Oil Co. v. Federated Service Ins. Co.*, 851 F.Supp. 1546, 1552 (D.Wyo.1994) (quoting *First Wyoming Bank, N.A., Jackson Hole v. Continental Ins.*, 860 P.2d 1094, 1098 (Wyo.1993)). *Hutchinson*, however, enunciated an insurer's broad duty to defend its *insured*. 851 F.Supp. at 1552. Because UP was not an "insured" under the Policy, Progressive had no duty to defend UP.

### 3. Was the CTS/Brown Contract an "insured contract" under the terms of the Policy?

■ In Section 10 of the CTS/Brown Contract, Brown agreed to indemnify and hold harmless CTS and UP from "any liabilities, charges, or attorneys fees resulting from injury to ... any of [UP's] employees." According to Section II(B)(2) of the Policy, however, the Policy does not apply to "[l]iability assumed under any contract or agreement" except liability for damages assumed in an "insured contract." The question then becomes whether Section 10 of the CTS/Brown Contract was an "insured contract" under the terms of the Policy.

According to Section V(F) of the Policy, an "insured contract" is:

"[t]hat part of any other contract or agreement pertaining to your business ... under which you assume the tort liability of another to pay for 'bodily injury' or 'property damage' to a third party or organization. Tort liability means liability that would be imposed by law in the absence of any contract or agreement...."

At issue in this case is Brown's assumption of an obligation to pay UP's defense costs. A contractual obligation to pay defense costs, however, does not fall into the definition of an "insured contract" under the Policy. The Policy's definition of "insured contract" is limited to an agreement by the insured to assume another's "tort liability," not defense costs. If Brown's assumption of UP's tort liability were at issue, the Court may very well find that the CTS/Brown Contract was an "insured contract" under the Policy's terms. However, this case involves Brown's assumption of UP's attorneys fees. Consequently, Progressive was not required to defend UP in the Keating and Cook lawsuits under the theory that the CTS/Brown Contract was an "insured contract."

The Court's analysis could very well end at this point. UP is not an "insured" according to the terms of the Policy and thus was not entitled to a defense from Progressive. In addition, the CTS/Brown Contract was not an "insured contract" under the terms of the Policy that triggered any duty to defend.

However, even assuming that UP was an "insured" under the Policy, Progressive still had no duty to defend UP in the Keating and Cook lawsuits. UP fell within one of the Policy's exclusions that absolved Progressive from any duty to defend.

### 4. Did any of the Policy's exclusions preclude coverage for UP's defense costs?

■ Section II(B)(4) of the Policy contains an "Employee Indemnification and Employer's Liability" Exclusion. According to that provision, the Policy does not apply to "[b]odily injury to ... an employee of the 'insured' arising out of and in the course of employment by the 'insured.'" Assuming *arguendo* that UP was an "insured" under the Policy, this provision denies UP benefits

under the insurance policy. Both Keating and Cook were employees of UP and alleged that they were injured in the scope of their employment with UP. Because the Policy does not provide coverage for bodily injury to employees injured in the scope of their employment, the Policy did not cover UP's defense costs in the Keating and Cook lawsuits. Progressive, who had no duty to defend these suits, did not breach its insurance contract.

 Granted, there is an exception to the employee indemnification exclusion for liability assumed by the insured (in this scenario, UP) under an "insured contract." If Keating and Cook sued UP pursuant to a contractual obligation, Progressive probably had a duty to defend UP. The duty to defend, which is broader than the duty to indemnify, depends not upon whether coverage in fact is determined to exist, but whether the allegations in the complaints against UP create a "potential" for coverage under the Policy. *See First Wyoming Bank,* 860 P.2d at 1078. Under Wyoming law, a "potential" for coverage is determined solely from the allegations contained in the third party complaint. *Id.* at 1075.

No such "potential" appeared in the Cook and Keating complaints. Neither complaint alleged, or even suggested, that UP's FELA liability was assumed under a contract between UP and its injured employees. UP's liability, therefore, was not based upon an "insured contract" that would have triggered Progressive's duty to defend.

In response, Brown argues that neither of the complaints contained any allegations which ruled out the possibility that UP assumed liability for Keating and Cook's injuries under an "insured contract." Brown, however, misinterprets the standard for the duty to defend. The standard is not whether the complaint contains any allegations that would "rule out" the possibility of coverage, but "whether the complaint alleges any facts or grounds which bring the action within the protection purchased." *First Wyoming Bank,* 860 P.2d at 1074. Progressive rightly points out that Brown's formulation of the standard would always result in a duty to defend because a complaint never rules out

that which is never addressed in the first place.

Therefore, even assuming UP is deemed an "insured" under the Policy, the Policy does not apply in the current context because the Keating and Cook suits fall within the Policy's exclusion for suits brought by employees of "insureds." Neither Keating nor Cook suggested in their complaint that they were suing UP pursuant to any contract that may be construed as an "insured contract" under the Policy. Consequently, Progressive had no duty to defend UP in the Keating and Cook suits and did not breach its insurance contract.

### 5. Brown's Claim of Bad Faith Against Progressive

Brown asks this Court to dismiss its claim for bad faith against Progressive. Following the completion of discovery in the case, Brown no longer contends that Progressive's alleged breach of contract meets the test for bad faith enunciated in *McCullough v. Golden Rule Ins. Co.,* 789 P.2d 855, 860 (Wyo. 1990). This Court agrees. Not only did Progressive comply with the terms of the Policy, even if Progressive did commit a breach, it does not meet the *McCullough* test for bad faith. Accordingly, Brown's claim of bad faith against Progressive is **DISMISSED WITH PREJUDICE.**

### CONCLUSION

The business automobile policy that Progressive issued to Brown did not provide coverage for UP's attorneys fees and costs incurred in its defense of the Cook and Keating law suits. First, UP was not an "insured" under the Policy. Second, the CTS/Brown contract was not an "insured contract" under the Policy. Third, even if UP was an "insured" under the Policy, the Policy excluded coverage for suits brought by an insured's employees.

Plaintiff Progressive Casualty Insurance Company's Motion for Summary Judgment is hereby **GRANTED** in its entirety. Defendant Brown's Crew Car of Wyoming, Inc.'s Motion for Partial Summary judgment is **DENIED.** Accordingly, the claims of Defendant Brown's Crew Car, Defendant Union

Pacific Railroad Company and Defendant Crew Transport Service Company are **DISMISSED** with prejudice. All parties shall bear their own costs.